Randall L. Jeffs, #12129
JEFFS & JEFFS, P.C.
90 North 100 East
P.O. Box 888
Provo, UT 84603
Telephone: (801) 373-8848
Email: rzjeffs@jeffslawoffice.com

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| CLAUDE E. CORTHRAN, an individual,<br><br>    Plaintiff,<br><br>v.<br><br>MOUNTAIN WEST OIL FIELD, a division of PTI Group USA LLC<br><br>    Defendant. | **COMPLAINT**<br><br><br><br>*Civil No.:* _____<br>*Judge:*_____ |

COMES NOW Plaintiff Claude Corthran, by and through counsel, Randall L. Jeffs of the law firm Jeffs & Jeffs, P.C., and complains of the Defendant as follows:

**PARTIES**

1. At the time of the events set forth herein, Plaintiff Claude Corthran (hereinafter "Claude") was a resident of Uintah County, State of Utah. Claude currently resides in the State of Utah.

2. Defendant Mountain West Oil Field (hereinafter "Mountain West") is a corporation that at all relevant times was doing business in Uintah County, State of Utah.

## JURISDICTION AND VENUE

3. All events giving rise to Plaintiffs' cause of action occurred in Uintah County, State of Utah.

4. This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 USCS § 2000e-2 et seq., and the Utah Antidiscrimination Act of 1965, as amended §34A-5-101 et seq., which prohibit racial discrimination, harassment, and retaliation in the workforce.

5. This Court has personal and subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331. Jurisdiction over this action is also based on 42 U.S.C. § 2000e-5(f)(3).

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

## GENERAL ALLEGATIONS

7. Plaintiff is an African-American male.

8. He was hired by Lon Boyer, Assistant General Manager of Mountain West to work as a Rig-Up Driver at the Vernal, Utah branch of Mountain West on or about May 26, 2011 and was the first African-American driver hired for that position in Utah.

9. In June 2011, Mr. Boyer was transferred to Mountain West's branch in North Dakota.

10. Mountain West controls the scheduling, assigned trucks, assigned jobs and assigned trucking routes in Utah through a dispatch office (hereinafter "Dispatch") staffed by Mountain West employees, also located in Utah.

11. After Mr. Boyer's departure in June 2011, Claude was subjected to ongoing harassment and discrimination by fellow employees and Dispatch, based upon his race.

12. Throughout the next 13 months, Claude suffered a hostile work environment, which included such behavior as racial slurs, threats to his personal safety, demeaning comments made by fellow employees, and unequal treatment by Dispatch.

13. On multiple occasions, the phrase "nigger rig it" was used in relation to Claude and his work product.

14. For example when Claude had questions regarding how to perform a certain job function, he was told to "nigger rig it." The comments were made by Caucasian employees (both co-workers and employees in Dispatch) in a manner intended to demean Claude's intelligence and mock his work product by linking his work performance to his race, with the implication that persons of his race are less intelligent and produce inferior work product.

15. Understandably, Claude was deeply offended by these racist comments from his co-workers and employees in Dispatch.

16. The harassment of Claude, on account of his race, was severe and pervasive such that it altered and affected the terms and conditions of his employment.

17. The unequal treatment and harassment primarily stemmed from a Caucasian coworker, Eric Pilcher (hereinafter "Pilcher"), who worked in Dispatch.

18. After Claude complained to human resources about Pilcher, Pilcher began giving him bad dispatch assignments and gave Claude less work.

19. Claude complained several times to management and human resources about the harassment, including the racial slurs and demeaning comments.

20. Specifically, Claude spoke with management starting in the fall of 2011 and continued to relay his concerns to management all through the remainder of his employment.

21. Claude sent letters to Mountain West complaining about the discrimination, harassment, and retaliation on: September 12, 2011; February 24, 2012; March 4, 2012; March 7, 2012; July 10, 2012; and July 16, 2012.

22. Despite all of Claude's complaints, Mountain West failed to resolve the problems and harassment from his coworkers continued.

23. Mountain West's management was unresponsive to Claude's complaints regarding the harassment, discrimination, and retaliation directed towards him based upon his race, and allowed the verbal abuse, physical threats, and demeaning treatment to continue.

24. After making some complaints, Claude was confronted and verbally attacked by different Caucasian coworkers on the following dates: August 2, 2011, September 8, 2011, September 22, 2011, October 13, 2011, February 24, 2012, and February 28, 2012.

25. Mountain West has a policy in place for disciplinary actions. The policy is divided among levels of discipline. A Level 1 violation receives a written warning, and if it reoccurs four times it can result in termination. A Level 2 violation results in 3 days off without pay and if it reoccurs, a second Level 2 violation can result in termination. Level 3 violations include: use of intoxicants and/or drugs while on duty, on company property or being under the influence at company mandated reporting time for duty; rear end collision; failure to report an accident, or damage to equipment; and causing or being contributory to an accident (major traffic accident involving fatalities, extensive damage to property or vehicles).

26. After complaining, Claude was given a Level 3 write up and a seven day suspension by Mountain West in which Mountain West made determinations regarding events

involving Claude that simply did not occur. Claude was not afforded an opportunity to refute the allegations against him.

27. It was alleged that Claude damaged a piece of equipment and failed to report it. The allegedly damaged piece of equipment was a quarter panel on another employee's vehicle that was loose which Claude noticed and documented during a post-trip inspection. He had not caused the damage.

28. Mountain West's attempt to inflict blame for this damage on Claude was a pretext and is evidence of the targeting, discrimination and retaliation that Claude experienced due to the complaints that he had made.

29. On July 26, 2012, Claude was suspended from work for seven days.

30. Claude is unaware of any other alleged infractions resulting in his suspension.

31. Immediately upon his return from his suspension, Mountain West gave Claude a new Level 3 violation for an alleged failure to report an accident or damage to equipment, blaming Claude for the damage to a fender on a truck he had driven. Claude was immediately terminated.

32. What actually happened was that after Claude drove the work truck, he noticed that the fender was loose. Claude informed Doug Scott, the driver taking that truck over for the next shift, and marked the fender on his post trip inspection log.

33. When Claude left the vehicle, the fender was not damaged, it was only loose.

34. Claude did not damage the fender.

35. Although Claude was under no obligation to report damage to Mountain West for the fender because it was not damaged when he left it. However, he did report it by including it

is in his post trip inspection log. Any damage that occurred would have occurred after he turned the truck over.

36. Moreover, the alleged damage to the fender was only $203.99.

37. Claude wouldn't have risked his job by not reporting such a small amount of damage, even if he had caused it.

38. Claude was terminated from Mountain West Oil Field on August 31, 2012.

39. A motivating factor in Claude's termination was his race and was also in retaliation for his complaints about harassment and discrimination.

40. Even if Claude had committed the Level 3 violation, there were Caucasian employees that committed much worse damage to vehicles, and failed to report such damage, who were not terminated, thereby demonstrating the disparate treatment that Claude received even if he had been the cause of the alleged damage.

41. Specifically, there were two Caucasian employees, Reul Crowton ("Crowton") and Tony Ivie ("Ivie") who had multiple Level 3 violations that did not result in termination and had resulted in thousands of dollars (at one point in excess of $20,000) of damage to trucks and work property.

42. Ivie was written up for having 3 Type B violations (vehicular accidents regardless of fault) in less than 10 months of employment. His violations resulted in thousands of dollars of damage.

43. Jerry Morris ("Morris") was terminated for running a truck off the road and failing a drug test.

44. James Debenham ("Debenham") was terminated for rolling his truck and causing significant damage.

45. Due to these circumstances, Claude filed a charge with the Utah Anti-discrimination and Labor Division (UALD) the agency licensed by the Equal Employment Opportunity Commission in Utah to investigate and render administrative decisions on workplace discrimination.

46. After due investigation, the UALD issued a written Determination and Order. (Attached herewith as Exhibit A)

## FIRST CAUSE OF ACTION
### (Title VII: Race Discrimination and Disparate Treatment)

47. Plaintiff realleges the preceding paragraphs as if fully set forth herein.

48. This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 USCS § 2000e-2 et seq., which provides that it is unlawful for an employer to discriminate on the basis of race.

49. Claude is African-American, a member of a protected class, and his race differs from that of other Mountain West employees.

50. Claude was qualified for the position he held as a Mountain West employee.

51. A potential circumstance that gives rise to discrimination is disparate treatment which, but for the employee's protected trait, would be different. UALD Determination and Order; *International Union, et al. v. Johnson Controls, Inc.* 499 U.S. 187 (1991).

52. Claude was subjected to discrimination and adverse employment action when Pilcher gave him "bad assignments" which resulted in a loss of pay and when Defendant

suspended his employment for the two alleged Level 3 violations and terminated him on August 31, 2012.

53. The circumstances and timing of his suspension and termination, coupled with the timing of his complaints due to racist comments made in the workplace, give rise to a discriminatory inference.

54. Mountain West suspended Claude because of a second Level 3 violation. However, Mountain West did not issue him a first Level 3 violation. The failure to report damage violation that he received was his first Level 3 violation.

55. There were Caucasian employees that committed violations that resulted in thousands of dollars in damage to work property and were not terminated.

56. Additionally, another Caucasian employee, Crowton, was given three Level 3 violations for the same offense as Claude, failure to report damage to a work vehicle, before he was terminated and the damage on his final violation reached over $20,000.

57. Crowton was given three warnings for not reporting an accident or damage to equipment and Claude was terminated on his first offense and his damage was only $203.99.

58. Other individuals who were terminated for a first Level 3 violation had severe damage or monetary circumstances surrounding their disciplinary action.

59. Mountain West terminated Jerry Morris for running a truck off the road and failing a drug test.

60. Mountain West terminated Debenham for rolling his truck and causing significant damage.

61. Ivie was written up for having 3 Type B violations in less than 10 months of employment. Claude and witnesses confirmed that Ivie's violations resulted in thousands of dollars of damage.

62. Causing or being contributory to an accident that has extensive damage to property, or extensive damage to vehicles is considered a Level 3 violation. However, Ivie was never written up for a violation like that. Instead, he was written up for a type B violation. A type B violation includes all vehicle accidents regardless of fault.

63. Specifically, Claude was not afforded an opportunity to address the events of his alleged Level 3 violation and further argues that he should not have been issued a Level 3 violation because he did not damage the vehicle and had provided notice and logged that the part was loose.

64. There were individuals who were terminated for their first Level 3 violation but they had caused severe damage and monetary repercussions, whereas Claude's alleged violation consisted of $203.99 damage to a fender that was even marked by Claude during a post trip inspection.

65. The evidence produced by Mountain West during the UALD investigation shows a damage amount listed next to all of Claude's alleged violations but no such amount for the violations of the other employees. It is disparate treatment to have listed the damage violation for the African American employee but not for any of the Caucasian employees.

66. Mountain West discriminated against Claude on the basis of his race.

67. Claude has suffered substantial damages as a result of this discrimination, including loss of employment.

## SECOND CAUSE OF ACTION
### (Title VII: Racial Harassment)

68. Plaintiff realleges the preceding paragraphs as if fully set forth herein.

69. Claude brings this action against the Defendant alleging racial harassment in the work environment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 USCS § 2000e-2 et seq.

70. Claude is an African American and therefore a member of a protected class.

71. He was subjected to unwelcome and unwanted conduct based on his race when he was involved in confrontations with several coworkers, when he was subjected to an unfair dispatch system, and when he overheard employees use the term "nigger rig it" in reference to him.

72. The harassment was sufficiently severe and pervasive as to alter the terms and conditions of his employment, creating a hostile work environment.

73. On August 2, 2011, Claude was in a confrontation with a Caucasian coworker because Claude had been driving slowly. During the argument, the coworker said that Claude "needed to find another place to work." Claude understood that the coworker felt Claude shouldn't work there because of his race since Claude was the only African American worker at Mountain West.

74. On September 8, 2011, Claude was in an argument with another Caucasian employee because they were unjustifiably delaying repairs on his work truck.

75. Claude also states that a coworker said to him, "Kiss my ass you dumb, fuck."

76. On another occasion, a different coworker said, "Claude I will beat your black ass if you don't shut up" and "I will bust you in your mouth if you don't shut the fuck up."

77. These and other interactions establish that Claude experienced a hostile work environment and that his race was a motivating factor in the hostile treatment he received.

78. Claude reported these events to his supervisors and Mountain West took no action to remedy the harassment he was receiving and continued to receive.

79. Claude has suffered substantial damages as a result of this harassment, including loss of employment.

## THIRD CAUSE OF ACTION
### (Title VII: Retaliation)

80. Plaintiff realleges the preceding paragraphs as if fully set forth herein.

81. Claude brings this action against the Defendant alleging violation of Title VII of the Civil Rights Act of 1964, as amended, 42 USCS § 2000e-2 et seq., which prohibits employers from retaliating against employees on account of their filing of administrative or other complaints concerning discrimination.

82. Claude was engaged in protected speech in opposing the racial discrimination and harassment that he experienced and which was permitted and perpetuated by Mountain West.

83. Claude was subject to an adverse employment action subsequent to his protected activity in complaining about discrimination and harassment when Mountain West suspended him and terminated his employment unjustifiably on August 31, 2012 after ignoring his many complaints to management concerning the racial discrimination and harassment, including four complaints the first half of that year, and his final two complaints only the month before his termination.

84. Claude has suffered substantial damages as a result of this retaliation, including loss of employment.

## FOURTH CAUSE OF ACTION
### (Utah Antidiscrimination Act: Race Discrimination)

85. Plaintiff realleges the preceding paragraphs as if fully set forth herein.

86. Claude brings this action against the Defendant alleging violation of the Utah Antidiscrimination Act of 1965, as amended, §34A-5-101 et seq., which provides that it is unlawful for an employer to discriminate on the basis of race.

87. On the basis of the aforementioned facts, Mountain West has discriminated against Claude on the basis of his race in violation of U.C.A. § 34A-5-101 et seq.

88. Claude has suffered substantial damages as a result of this race discrimination, including loss of employment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks the Court for relief as follows:

1. For a determination by the Court that Defendant has committed racial discrimination, disparate treatment, harassment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 USCS § 2000e-2 et seq., and racial discrimination in violation of the Utah Antidiscrimination Act of 1965, as amended §34A-5-101 et seq.

2. For compensatory damages in an amount to be determined by the Court but believed to be in excess of $400,000.

3. For liquidated damages in an amount equal to compensatory damages.

4. For punitive damages pursuant to 42 U.S.C. § 1981a(b)(1);

5. Interest on the amount described in paragraphs (2), (3) and (4) above, calculated at the prevailing rate;

6. Reasonable attorney's fees, litigation expenses and other costs of the action pursuant to 42 U.S.C. § 2000e-5(k).

DATED and SIGNED this 26th day of June, 2015.

JEFFS & JEFFS, P.C.

  /s/ Randall L. Jeffs
*Attorneys for Plaintiffs*